**MODIFY and AFFIRM; and Opinion Filed December 12, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00969-CV

**RICHARDSON COMMUNICATIONS & CONSULTING, INC., Appellant**
**V.**
**JAMES H. MCNEESE, Appellee**

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-02740-2017**

## MEMORANDUM OPINION

Before Justices Francis, Stoddart, and Schenck
Opinion by Justice Schenck

Appellant Richardson Communications & Consulting Inc. ("RCC") appeals the trial court's order granting summary judgment in favor of appellee James McNeese on McNeese's breach of contract claim. In its first three issues, RCC urges the trial court erred in granting McNeese summary judgment because (1) McNeese lacks standing and the capacity to sue for breach of a settlement agreement signed by the parties (the "Agreement"), (2) RCC's summary judgment evidence raised a fact issue regarding (a) whether McNeese's prior material breaches of the Agreement excused RCC's continued performance, (b) whether RCC waived McNeese's prior and subsequent breaches of the Agreement by continuing to enforce the Agreement, (c) whether McNeese was entitled to installment payments for December 2015, and January and February 2016 only, and (d) whether the trial court's decree in McNeese and Rachel Thornton McNeese's

("Thornton") divorce proceeding allowed for the cessation of payments under the Agreement, and (3) McNeese's declarations are not competent summary judgment evidence. In its final issue, RCC urges the trial court erred in awarding McNeese appellate attorney's fees that are not conditioned on a successful prosecution or defense of an appeal.

By cross-appeal, McNeese urges the trial court erred in compelling specific performance of the Agreement and in awarding him payments through May 2017, rather than through June 2021. As modified herein, we affirm the trial court's order. Because the dispositive issues in this case are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## FACTUAL AND PROCEDURAL BACKGROUND

The marriage of McNeese and Thornton ended on November 4, 2016. Prior to the termination of their marriage, each spouse owned and operated his or her own business. McNeese owned and operated VARCentric, Inc., and Thornton owned and operated RCC.[1] During the divorce proceeding, in discussing the division of the marital estate, a dispute arose about the right to payments RCC received from Golds Gym and Golds Holding Corp. (collectively "the Golds"), customers McNeese procured for RCC, as well as the ownership of RCC. Rather than have the dispute concerning ownership and compensation decided as part of the divorce proceeding, Thornton, on behalf of RCC, and McNeese decided to settle the matter. They did so through mediation on November 30, 2015. The settlement was formally documented and fully executed on February 1, 2016. The signatories to the Agreement are McNeese and Thornton, as President of RCC, and Thornton, individually, as to a provision treating payments that were made in December 2015 and in January and February 2016 as McNeese's separate property. The Agreement provided, in part, that "RCC shall pay Varcentric, Inc. ("Varcentric"), a corporation

---

[1] VARCentric appears to be a telecommunications broker. RCC is a technology and communications consulting firm with expertise in IT and cloud integration.

wholly owned and controlled at this time by [McNeese], on behalf of [McNeese] the amount of $5,000 per month (the "Payment Amount") so long as Golds Gym and Golds Holding Corp. . . . remain a customer of RCC." The Agreement also provided that RCC shall "pay Varcentric, on behalf of [McNeese], 60% commission on new orders that [McNeese] places on behalf of Golds through RCC." Other than these payments, "RCC shall not pay and does not owe any other amounts or commissions to [McNeese]." McNeese released any ownership claims in RCC and agreed to non-compete and confidentiality provisions. Pursuant to the Agreement, the non-compete and confidentiality provisions were made part of an agreed permanent injunction that was entered in the divorce proceeding.

On February 19, 2016, RCC filed a motion seeking to hold McNeese in contempt for violating the agreed permanent injunction. The trial court found McNeese violated the agreed permanent injunction by setting up a meeting with Kodiak Networks, an entity McNeese was enjoined from contacting, and fined him $250, and ordered him to pay attorney's fees and costs of the proceeding totaling $4,030. Thereafter, RCC made monthly payments in April and May. On May 16, 2016, RCC filed a second motion for contempt. Thereafter, RCC made the June payment. RCC did not make any further payments.

In August 2016, the trial court conducted a bench trial in the divorce case. On November 4, 2016, the trial court signed a final divorce decree that ordered McNeese to transfer 100% of the shares of VARCentric to Thornton.

On December 9, 2016, RCC amended its second motion for contempt. The affidavit in support of the amended motion claimed McNeese had diverted customers of RCC—namely, Media Gateway, Pegasus, Surgical Notes, Dancar, and Corix—and utilized RCC's confidential information in its independent sales representative agreements.

On December 20, 2016, McNeese filed suit against RCC, Thornton, and VARCentric asserting various causes of action, including a breach of contract claim against RCC. The trial court denied RCC's second motion for contempt on January 17, 2017. On January 19, 2017, RCC, Thornton, and VARCentric filed their Original Answer, generally denying McNeese's claims.

On March 28, 2017, McNeese filed a motion for traditional summary judgment on his breach of contract claim against RCC. He claimed he was entitled to recover commissions on the Golds' account through June 2021 totaling $300,000. McNeese supported his motion with his declaration, the mediated settlement agreement, the Agreement,[2] the judgment of contempt, RCC's answers to requests for admission and interrogatories, the itemized inventories of the marital estate, and the order denying RCC's second motion for contempt. He also submitted the declaration of his attorney on fees.

RCC, Thornton, and VARCentric amended their answer three times in April 2017 to assert various affirmative defenses and filed a counterclaim against McNeese asserting various claims. In their third amended answer, RCC, Thornton, and VARCentric asserted McNeese lacked the capacity and standing to sue and claimed RCC was excused from contractual performance because of McNeese's prior material breach. RCC filed its response to McNeese's motion for summary judgment minutes after filing the third amended answer. RCC attached to its response:

- various affidavits of Thornton, including the one RCC submitted with its amendment to its second motion for contempt, which the trial court had previously denied;[3]
- the agreed permanent injunction;
- the judgment of contempt;

---

[2] McNeese submitted the Agreement to the trial court for in-camera review. The parties agreed to supplement the trial court's record by filing the Agreement in the trial court under seal. RCC requested that the district clerk supplement the record on appeal to include the Agreement. The district clerk has complied with that request and the Agreement is in the record before this Court on appeal. In this opinion, we discuss those portions of the Agreement that are either discussed in the briefing and/or are necessary for the resolution of this appeal.

[3] RCC did not challenge the trial court's denial of its second motion for contempt. The second affidavit attached to RCC's response appears to be the one RCC presented with its first motion for contempt and the final affidavit, prepared in response to McNeese's motion for summary judgment, addresses McNeese's claim that the Golds' contract with RCC continues to June 2021.

–4–

- excerpts of the August 1, 2016 deposition of Chris Hall, owner of Hale Communications who started doing business with Pegasus Logistics and Surgical Notes, former customers of RCC, after RCC and McNeese entered into the Agreement;[4]

- the transcript of the trial court's ruling in the divorce case; and

- the divorce decree.

By order dated May 8, 2017, the trial court granted McNeese's motion for summary judgment and awarded him damages of $60,000 (12 monthly payments of $5,000), trial attorney's fees of $12,144, intermediate appellate fees of $10,000, and fees of $15,000 for an appeal to the Texas Supreme Court,[5] and ordered specific performance of the Agreement. On June 1, 2017, the trial court signed an agreed order severing McNeese's breach of contract claims against RCC and dismissing his other claims without prejudice. This appeal followed.

## DISCUSSION

### I.      Standing and Capacity

In its first issue, RCC challenges McNeese's standing and capacity to sue. A party must have both standing and capacity to sue. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit as to have a "justiciable interest" in its outcome, whereas the issue of capacity "is conceived of as a procedural issue dealing with the personal qualifications of a party to litigate." *Id.* "A plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has capacity when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Id.* at 848–49 (quoting *Nootsie, Ltd. v.*

---

[4] RCC relied on Hall's testimony concerning Pegasus Logistics and Surgical Notes in its amendment to its second motion for contempt. Hall's testimony established McNeese told Pegasus Logistics and Surgical Notes that he could not work with them due to a non-compete agreement. They asked McNeese for referrals and he gave them Hall's and others' names. Hall's testimony further established McNeese did not do business with Hale Communications; thus, he did not benefit from the referrals to Hall's company.

[5] The Order Granting Summary Judgment against RCC provides, in part, "If RCC appeals this order to the Texas Court of Appeals, Jim shall be entitled to recover reasonable attorneys' fees of $15,000 against RCC." The parties concede that this applies to an appeal to the Texas Supreme Court.

*Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996)). Issues of standing and capacity to sue are questions of law, which we review de novo. *Nauslar v. Coors Brewing Co*, 170 S.W.3d 242, 248 (Tex. App.—Dallas 2005, no pet.).

RCC claims McNeese cannot establish standing and capacity to sue because VARCentric was the payee under the Agreement and, as of the date the trial court ordered the transfer of VARCentric's stock and contracts to Thornton, McNeese no longer had the primary right of action with respect to VARCentric's claims, including the commission payments on Golds' account. RCC's position is flawed for the following reasons.

The record before us contains the Agreement, which the parties concede is unambiguous. Of course, the question of whether a contract is ambiguous is one of law and not of fact. *TM Prod., Inc. v. Nichols*, 542 S.W.2d 704, 707 (Tex. App.—Dallas 1976, no writ). We conclude, as a matter of law, that the Agreement is unambiguous.

The interpretation of an unambiguous contract is a question of law for the court. *Interstate 35/Chisam Road, L.P. v. Moayedi*, 377 S.W.3d 791, 796 (Tex. App.—Dallas 2012), *aff'd*, 438 S.W.3d 1 (Tex. 2014) (citing *MCI Telecomm. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999)). Unless the agreement shows the parties used a term in a technical or different sense, the terms are given their plain, ordinary, and generally accepted meaning. *Id.* at 797. Extrinsic evidence cannot alter the meaning of an unambiguous contract. *First Bank v. Brumitt*, 519 S.W.3d 95, 109 (Tex. 2017).

McNeese and RCC are parties and signatories to the Agreement. VARCentric is not a party to the Agreement. While the Agreement requires RCC to make payments to VARCentric, they are to be made **on behalf of McNeese**. "[O]n behalf of" means "in the interest of, as the representative of, [or] for the benefit of." *Housing Auth. of City of Dallas v. Killingsworth*, 331 S.W.3d 806, 811 (Tex. App.—Dallas 2011, pet. denied) (citing WEBSTER'S THIRD NEW

INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED at 198). Accordingly, VARCentric was simply a conduit for payments to McNeese. Thus, McNeese had a justiciable interest in the outcome of the litigation. *Lovato*, 171 S.W.3d at 848. When the trial court ordered McNeese to transfer 100% of the shares of VARCentric to Thornton, and turn over all outstanding contracts of VARCentric and all contracts to which VARCentric is a beneficiary of any kind, McNeese was not divested of his contractual rights under the Agreement, including his right to compensation, and he had the capacity to bring the breach of contract claim. *See John C. Flood of DC, Inc. v. SuperMedia, L.L.C.*, 408 S.W.3d 645, 651 (Tex. App.—Dallas 2013, pet. denied) (a challenge to a party's privity of contract is a challenge to capacity).

Next, RCC argues McNeese lacks standing because he was in breach of the Agreement. In doing so it cites to the Texas Supreme Court's decision in *Dobbins v. Redden*, 785 S.W.2d 377 (Tex. 1990). RCC's reliance on *Dobbins* is misplaced. *Dobbins* was not a standing case. Rather, it concerned whether a party had fulfilled its obligation of substantial performance of a construction contract in order to recover on a breach of contract claim. *Id.* It was a condition precedent case rather than a standing case and does not support RCC's argument here.

RCC further argues that because McNeese did not discuss standing and capacity in his motion for summary judgment, the trial court granted McNeese summary judgment on grounds not raised. This argument is unfounded. RCC cites no authority for the proposition that McNeese had any obligation to specifically address standing and capacity in his motion for summary judgment when the issues had not yet been raised. Nor does RCC cite to any authority that a party seeking traditional summary judgment on a breach of contract claim must, as a matter of course, specifically use the terms standing and capacity in its motion as "grounds" supporting the underlying motion for purposes of rule 166a's requirement that the motion specify its grounds.

We conclude that the Agreement, which is summary judgment evidence, establishes McNeese has standing and the capacity to maintain his breach of contract action against RCC. We overrule RCC's first issue.

## II. Summary Judgment

In its second issue, RCC urges the trial court erred in granting McNeese summary judgment because it presented summary judgment evidence that raised a fact issue as to (1) whether McNeese's prior material breaches of contract excused RCC's performance after June 2016, (2) whether RCC treated the Agreement as continuing after McNeese breached the Agreement, (3) whether the only payment obligations it owed to McNeese were for December 2015 and January and February 2016, and (4) whether the transfer of VARCentric stock to Thornton allowed for the cessation of payments.

### A. Standard of Review

The standard of review in traditional summary-judgment cases is well established. *Gonzalez v. Vatr Constr. LLC*, 418 S.W.3d 777, 782 (Tex. App.—Dallas 2013, no pet.). The issue on appeal is whether the movant met its summary-judgment burden by establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). The movant bears the burden of proof and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). We view all evidence and reasonable inferences in the light most favorable to the nonmovant. *Id.* We will not consider evidence favoring the movant's position unless it is not controverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965).

### B. Application of the Law to the Facts

#### 1. Excuse of Performance and Treating the Contract as Continuing

RCC contends the trial court erred in granting McNeese summary judgment because genuine issues of material fact exist as to whether McNeese's violation of the agreed permanent injunction obviated RCC's continued performance of the payment obligations, and whether RCC treated the covenant not to compete as continuing thereby waiving prior and subsequent breaches. Generally, when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance. *Mustang Pipeline Co., Inc. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004). The non-breaching party must elect between two courses of action, either continuing performance or ceasing performance. *Dallas Berkshire Partners, Ltd. v. James French Photography, Inc.*, No. 05-98-01352-CV, 2001 WL 200144, at *5 (Tex. App.—Dallas Mar. 1, 2001, pet. denied) (not designated for publication). If the non-breaching party elects to treat the contract as continuing and insists the party in default continue performance, the previous breach constitutes no excuse for nonperformance on the part of the party not in default and the contract continues in force for the benefit of both parties. *Id.* Thus, "[t]reating a contract as continuing, after a breach, deprives the non-breaching party of any excuse for terminating their own performance." *Id.*

The record before us establishes RCC filed a motion for contempt on February 19, 2016 urging McNeese had violated the agreed permanent injunction, which was entered pursuant to the Agreement and incorporated its non-compete and confidentiality terms. On March 10, 2016, the trial court found McNeese violated the agreed permanent injunction by setting up a meeting with one of RCC's customers. The court ordered McNeese to pay a fine of $250 and attorney's fees and costs in the amount of $4,030. RCC's answers to interrogatories establish that thereafter RCC made the April, May, and June payments under the Agreement. The summary judgment record

further establishes that on May 16, 2016, RCC filed a second motion for contempt against McNeese for alleged violations of the non-compete and confidentiality terms. On December 9, 2016, RCC amended its second motion for contempt, and the trial court denied same on January 17, 2017. In response to McNeese's motion for summary judgment and on appeal, RCC relies on the alleged breaches of the Agreement that were the subject of RCC's second motion for contempt, as amended, which the trial court implicitly found were not material violations of the injunction. By seeking a contempt order after discovering these alleged violations of the injunction, which was put in place pursuant to the Agreement, RCC treated McNeese's obligations under the Agreement as continuing, and therefore, it could not cease its own performance thereunder. *See Dallas Berkshire Partners*, 2001 WL 200144, at *5. We conclude a fact issue was not raised as to RCC's affirmative defense of excuse of performance.[6]

RCC further contends the trial court erred in granting McNeese summary judgment because he did not present evidence that he performed or tendered performance under the contract. But evidence of performance or tender is only required in situations where the parties have mutually concurrent contract obligations, which is not the case here. *See Petras v. Criswell*, 248 S.W.3d 471, 480 (Tex. App.—Dallas 2008, no pet.); *Krayem v. USRP (PAC), L.P.*, 194 SW.3d 91, 94 (Tex. App.—Dallas 2006, pet. denied). Accordingly, this argument fails.

### 2. Payment Obligations

RCC contends that paragraph 5 of the Agreement makes it clear that the payments due in December 2015 and in January and February of 2016 are the only payments owed to McNeese and that thereafter the payments were the property of VARCentric. Paragraph 5 titled *No Other Payments to [McNeese]* provides, "Other than those amounts listed in Sections 3 and 4 *supra*,

---

[6] Under a waiver concept, RCC contends that the resolution of McNeese's previous breaches did not resolve the subsequent breaches which lead to RCC's cessation of the payments under the Agreement. This argument ignores the fact that after RCC was aware of the alleged breaches it continued to insist that McNeese was bound by the terms of the Agreement. Accordingly, RCC's discussion of waiver is unavailing.

RCC shall pay and does not owe any other amounts or commissions to [McNeese]. The Parties and Petitioner Rachel McNeese agree that the $5,000.00 payments payable by RCC to Varcentric for December 2015 and January and February 2016 are partitioned as [McNeese's] separate property." Paragraphs 3 and 4 separately provide for the payments to VARCentric, "on behalf of McNeese," of $5,000 per month so long as the Golds remain customers of RCC and a 60% commission on any new orders that McNeese places on behalf of the Golds. Thus, the first sentence of paragraph 5 clearly identifies the commission payments as the property of McNeese, and the designation of the payments made to McNeese in December 2015 and in January and February 2016 as McNeese's separate property does not vitiate his right to receive payments in the future. RCC construction of paragraph 5 to the contrary would lead to absurd results and would render other parts of the Agreement meaningless. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133–34 (Tex. 1994) (holding interpretation of agreement should not render any material terms meaningless).

### 3. Transfer of VARCentric Stock

For the reasons set forth above, we reject RCC's argument that any interest McNeese had in the Golds' payments terminated with the divorce decree's award of VARCentric stock to Thornton.

We overrule RCC's second issue.

## III. Summary Judgment Evidence

In its third issue, RCC argues McNeese's evidence does not support the summary judgment because it is conclusory and speculative. First, RCC takes issue with McNeese's declarations that:

> In exchange for the payments ("Golds Payments"), I agreed to non-compete terms with RCC. With Rachel Dee Thornton f/k/a Rachel McNeese's assent, the mediated settlement agreement partioned [sic] payments ("Golds Payments") as "Jim's separate property." VarCentric, Inc. was not a party to the mediated settlement agreement.

> The final settlement agreement contained non-compete terms that I agreed to in exchange for the Golds Payments. The final settlement agreement also partioned [sic] Golds Payments as "Jim's separate property" with Rachel's assent. VarCentric, Inc. was not a party to the final settlement agreement.

Assuming without deciding these declarations are not competent summary judgment evidence, they are not necessary or critical to McNeese's motion because the Agreement was before the court and is sufficient in and of itself to substantiate the existence of an agreement between RCC and McNeese and that VARCentric was not a party nor a beneficiary of same. *See OAIC Commercial Assets, L.L.C. v. Stonegate Village, L.P.*, 234 S.W.3d 726, 738 (Tex. App.—Dallas 2007, pet. denied).

Next, RCC takes issue with McNeese's attorney's declaration in support of appellate attorney's fees. As to appellate fees, McNeese's attorney declared:

> I am familiar with the reasonable and customary charges for appeals to the Court of Appeals and petitions to the Supreme Court of Texas. In my opinion, a reasonable and customary charge for the services to be performed by the law firm of Gardere in the event of any appeal to the Court of Appeals is $10,000.00. Furthermore, in my opinion a reasonable and customary charge for the services to be performed by the law firm of Gardere in the event that a petition in the Supreme Court of Texas is filed is $15,000.00.

McNeese's attorney's declaration establishes he has been licensed to practice law in Texas since 2009, he is familiar with the usual and customary work performed in representing parties in disputes in the nature of this case, he is familiar with the reasonable and customary charges for appeals, and concludes that $10,000 is a reasonable and customary charge for services to be performed in the event of an appeal to this Court, and $15,000 is a reasonable and customary charge for services to be performed in the event of an appeal to the supreme court. This evidence supports the award of appellate attorney's fees. *See Sundance Minerals*, *L.P. v. Moore*, 354 S.W.3d 507, 513–14 (Tex. App.—Fort Worth 2011, pet. denied).

We overrule RCC's third issue.

## IV. Attorney's Fees

In its final issue, RCC urges the trial court erred in granting McNeese attorney's fees on appeal not conditioned on a successful prosecution or defense of an appeal. The order granting summary judgment provides:

> If RCC appeals this order to the Texas Court of Appeals, [McNeese] shall be entitled to recover reasonable attorneys' fees of $10,000 against RCC;

> If RCC appeals this order to the Texas Court of Appeals [sic], [McNeese] shall be entitled to recover reasonable attorney's fees of $15,000 against RCC.

At no point is this award conditioned upon appellee's success on appeal. A trial court may not grant a party an unconditional award of appellate attorney's fees. *See In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex. 1998); *Weynand v. Weynand*, 990 S.W.2d 843, 847 (Tex. App.—Dallas 1999, pet. denied). To do so could penalize a party for pursuing a meritorious appeal. *Ford*, 988 S.W.2d at 721; *Smith v. Smith*, 757 S.W.2d 422, 426 (Tex. App.—Dallas 1988, writ denied).

McNeese concedes that an unconditional award of appellate attorney's fees is improper. The failure of the trial court to condition the award of fees on the success of the prevailing party does not require a reversal of the judgment, instead, we may modify a trial court's judgment to make the award of appellate attorney's fees contingent upon the prevailing party at trial's success on appeal. TEX. R. APP. P. 43.3; *Lawry v. Pecan Plantation Owners Ass'n*, No.02-15-00079-CV, 2016 WL 4395777, at *9 (Tex. App.—Fort Worth Aug. 18, 2016, no pet.) (mem. op.); *Musgrave v. Brookhaven Lake Prop. Owners Ass'n*, 990 S.W.2d 386, 403 (Tex. App.—Texarkana 1999, pet. denied). We therefore sustain RCC's fourth issue and modify the trial court's awards of appellate attorney's fees to be contingent on McNeese prevailing on appeal or petition for review.

## V. Cross Appeal

By cross appeal, McNeese claims the trial court should have granted him summary judgment in the amount of $300,000 and erred in ordering specific performance of the Agreement

when no party asked for that relief. McNeese claims that because his declaration established RCC is under contract with the Golds through 2021, he should have been awarded payments through 2021 totaling $300,000, rather than $60,000. In response to McNeese's motion, RCC presented the declaration of Thornton in which she states there is no contract between the Golds and RCC; rather, the only contract is between the Golds and Earthlink, for which RCC receives commissions and the commissions will continue as long as the Golds continues to contract with Earthlink, and any agreements between the Golds and Earthlink are at risk due to Windstream's purchase of Earthlink. Consequently, the summary judgment evidence did not conclusively establish the Golds would be a customer of RCC through June 2021. Our decision here does not preclude McNeese from pursuing additional breach of contract claims in the event he is entitled to payments and RCC fails to pay.

As to McNeese's claim the trial court erred in ordering the parties to specifically perform the Agreement, the Order Granting Summary Judgment orders, in part, that:

> So long as Golds Gym and Golds Holding Corp., and any of its parents, holding companies, franchises, franchisees, subsidiaries, partners, or related business remain a customer of RCC or any service provider for whom RCC serves as an agent, either directly or as a sub-agent of a master agent, RCC shall pay Jim $5,000 per month on the fifteenth day of each month or the next following business day if the fifteenth day of the month falls on a Saturday, Sunday, or other bank holiday. RCC's first payment is due June 15, 2017. The Settlement Agreement entered into by and between the parties on or about February 1, 2016 otherwise is in full force and effect as of the date of this order.

Specific performance is an equitable remedy that may be awarded upon a showing of breach of contract. *Kress v. Soules*, 261 S.W.2d 703, 704 (1953); *Living Christ Church, Inc. v. Jones*, 734 S.W.2d 417, 419 (Tex. App.—Dallas 1987, writ denied). Specific performance is not a separate cause of action, but rather it is an equitable remedy used as a substitute for monetary damages when such damages would not be adequate. *See Stafford v. So. Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007 pet. denied). The summary judgment record does not establish

monetary damages would be inadequate to compensate McNeese for the damages he suffered due to RCC's breach of the Agreement or that the issue is presently ripe in view of potential fact questions concerning whether Golds would continue as a customer each month through June 2021. Thus, the trial court erred in ordering specific performance rather than leaving the issue of continued performance for another day.

We sustain McNeese's cross-issue as to specific performance and overrule McNeese's cross-issue as to the damages awarded.

CONCLUSION

We modify the trial court's awards of appellate attorney's fees to be contingent on McNeese prevailing on appeal or petition for review and vacate the portion of the order requiring specific performance. As modified, we affirm the summary judgment order.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

170969F.P05

–15–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RICHARDSON COMMUNICATIONS &
CONSULTING, INC., Appellant

No. 05-17-00969-CV      V.

JAMES H. MCNEESE, Appellee

On Appeal from the 401st Judicial District
Court, Collin County, Texas
Trial Court Cause No. 401-02740-2017.
Opinion delivered by Justice Schenck.
Justices Francis and Stoddart participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

> The award of appellate attorney's are contingent upon James McNeese prevailing
> on appeal or petition for review and the order for specific performance is vacated.

It is **ORDERED** that, as modified, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee JAMES H. MCNEESE recover his costs of this appeal from appellant RICHARDSON COMMUNICATIONS & CONSULTING, INC.

Judgment entered this 12th day of December, 2018.